IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| PAMALA H.,[1] | ) | Civil Action No. 2:24-cv-04536-SAL-MGB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| FRANK BISIGNANO,[2] | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Pamala H. ("Plaintiff"), brought this action pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). This matter was referred to the Magistrate Judge for a Report and Recommendation ("R&R") pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B). For the reasons set forth herein, the undersigned recommends reversing the decision of the Commissioner and remanding for further consideration.

**RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed applications for DIB and for SSI on January 3, 2021, alleging a disability onset date of April 23, 2018. (R. at 18.) Plaintiff was 34 years old on her alleged disability onset date. (R. at 27.) Plaintiff claims disability due to, *inter alia*, degenerative disc disease, lumbar

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

radiculopathy, spondylosis of lumbosacral region, and spinal osteoarthritis. (R. at 398.) Plaintiff has at least a high school education and past relevant work as a certified nursing assistant. (R. at 27.)

Her applications were denied initially and on reconsideration. (R. at 18.) After a hearing before an Administrative Law Judge ("ALJ") on March 8, 2024, the ALJ issued a decision on April 22, 2024, in which the ALJ found that Plaintiff was not disabled. (R. at 18–29.) The Appeals Council denied Plaintiff's request for review, (R. 1–7), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

(1) The claimant meets the insured status requirements of the Social Security Act through March 31, 2024.

(2) The claimant has not engaged in substantial gainful activity since April 23, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3) The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, sciatica, neuralgia, and obesity (20 CFR 404.1520(c) and 416.920(c)).

(4) The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5) After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant needs a sit/stand option—meaning the claimant needs to be able to change position every 30 minutes between sitting and standing but can remain on task for two hours at a time, eight hours in a given workday. The claimant cannot stand more than 4 hours in a given workday. The claimant can never climb ladders, ropes, or scaffolds, but the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. The claimant should not be exposed to hazards such as unprotected heights.

(6)      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)      The claimant was born on February 7, 1984, and was 34 years old, which is defined as a younger individual age 18–49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)      The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

(9)      Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)      Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

(11)      The claimant has not been under a disability, as defined in the Social Security Act, from April 23, 2018, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(R. at 18–29.)

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The Act also provides that SSI disability benefits shall be available for aged, blind, or disabled persons who have income and resources below a specific amount. *See* 42 U.S.C. § 1381 *et seq.* "Disability" is defined in the Act as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period

3

of not less than twelve months." 42 U.S.C. § 423(d)(1)(A) (DIB context); 42 U.S.C. § 1382c(a)(3)(A) (SSI context).[3]

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment. 20 C.F.R. § 404.1520 (DIB context); 20 C.F.R. § 416.920 (SSI context). If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4) (DIB context); 20 C.F.R. § 416.920(a)(4) (SSI context).

The claimant bears the burden of proof with respect to the first four steps of the analysis. *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 659 (4th Cir. 2017). Once the claimant has established an inability to return to her past relevant work, the burden shifts to the Commissioner to show that the claimant—considering her age, education, work experience, and residual functional capacity—can perform alternative jobs and that such jobs exist in the national economy. SSR 82-62, 1982 WL 31386, at *3; *Grant*, 699 F.2d at 191; *Pass*, 65 F.3d at 1203; *Monroe v. Colvin*, 826 F.3d 176, 180 (4th Cir. 2016).

---

[3] "[T]he definition of disability is the same under both DIB and SSI. . . ." *Morgan v. Saul*, 9:19-CV-1390-BHH-BM, 2020 WL 3318630, at *1 n.1 (D.S.C. June 3, 2020) (citing *Emberlin v. Astrue*, No. 06-4136, 2008 WL 565185, at *1 n.3 (D.S.D. Feb. 29, 2008)).

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the Commissioner supported his findings with substantial evidence and applied the correct law. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015); *Woods v. Berryhill*, 888 F.3d 686, 691 (4th Cir. 2018); *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 94 (4th Cir. 2020); 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3). Consequently, the Act precludes a de novo review of the evidence and requires that the court uphold the Commissioner's decision as long as it is supported by substantial evidence. *Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988); *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012); *Mascio*, 780 F.3d at 640; *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 383 (4th Cir. 2021); 42 U.S.C. § 405(g).

"Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Dowling*, 986 F.3d at 383 (citing *Pearson v. Colvin*, 810 F.3d 204, 207 (4th Cir. 2015)). It is "more than a mere scintilla of evidence but may be less than a preponderance." *Pearson*, 810 F.3d at 207 (citing *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012)). In reviewing for substantial evidence, the court does not undertake to "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Hancock*, 667 F.3d at 472; *Arakas*, 983 F.3d at 95; *Dowling*, 986 F.3d at 383. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the reviewing court must defer to the ALJ's decision. *Shinaberry v. Saul*, 952 F.3d 113, 123 (4th Cir. 2020) (citing *Hancock*, 667 F.3d at 472).

However, the court does not "reflexively rubber-stamp an ALJ's findings." *Dowling*, 986 F.3d at 383 (citing *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017)). An ALJ may not cherry-pick, misstate, or mischaracterize material facts. *Arakas*, 983 F.3d at 99 (citing *Lewis*, 858 F.3d at

5

869). Rather, ALJs "must 'build an accurate and logical bridge' from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quoting *Monroe*, 826 F.3d at 189).

## DISCUSSION

Plaintiff asserts that the ALJ erred in his assessment of Plaintiff's residual functional capacity ("RFC"). (Dkt. No. 22.) First, Plaintiff asserts the ALJ did not adequately explain why he declined to adopt certain limitations opined by Plaintiff's orthopedic consultative examiner, whose opinion the ALJ found partially persuasive. (*Id.* at 2–7.) Next, Plaintiff argues that the ALJ's RFC assessment was "internally inconsistent" and "in conflict with either a sedentary or light exertion work finding." (*Id.* at 7–12.) Finally, Plaintiff contends that the RFC assessment did not account for Plaintiff's mild limitations in maintaining concentration, persistence, and pace. (*Id.* at 12–16.) The Commissioner responds that substantial evidence supports the ALJ's finding that Plaintiff's limitations do not preclude all work activity. (Dkt. No. 23.) The undersigned considers these arguments below.

  A.  **The ALJ's Decision**

The ALJ's decision considers whether Plaintiff was disabled from April 23, 2018, the alleged disability onset date, through the date of his decision, April 22, 2024. The ALJ considered Plaintiff's allegations of disability and found that she had the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, sciatica, neuralgia, and obesity. The ALJ found that the evidence indicated Plaintiff's alleged hypertension and hypercholesterolemia were non-severe. (R. at 21.) The ALJ further found that Plaintiff's "medically determinable mental impairments of depression; somatic symptom disorder, predominate pain type; and bipolar 1 disorder; considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and

are therefore non-severe." (R. at 21.) The ALJ found that Plaintiff had mild limitations in concentrating, persisting, or maintaining pace; and no limitations in understanding, remembering or applying information; interacting with others; and adapting or managing oneself. (R. at 22.) Here, the ALJ stated:

> The first functional area is understanding, remembering, or applying information. In this area, the claimant has no limitation. The claimant has earned her high school diploma online and began work toward an associate degree (Exhibit 32F, page 5). At her consultative exam she was alert and oriented, had an awareness of current events, and reported a 19-year employment history as a Certified Nursing Assistant. Intellectually she appeared to be at least functioning in the borderline range. (Exhibit 32F).
>
> The next functional area is interacting with others. In this area, the claimant has no limitation. The claimant reports that she "always" received good work performance reviews and got along well with supervisors, coworkers, patients and their families, and members of the public. She reports that she texts several former classmates regularly and interacts with members of her church when she attends (Exhibit 32F, page 6). Interpersonally, the claimant appears to be able to easily understand the give-and-take associated with appropriate and effective social interactions. (Exhibit 32F, page 8).
>
> The third functional area is concentrating, persisting, or maintaining pace. In this area, the claimant has mild limitation. She reports that she enjoys watching a variety of television programs throughout the day. She reports that she reads devotional books. She reports that she uses her cell phone to call and text others as well as to access the internet, via sites such as Facebook and Instagram, through which she says that she interacts with family members and former classmates (Exhibit 32F, page 6).
>
> The fourth functional area is adapting or managing oneself. In this area, the claimant has no limitation. She reports that, while she knows how to perform all higher-order activities of daily living, she asserts that she is often unable to perform them for any sustained periods due to struggles with pain throughout her body, difficulties with bending, stretching, and lifting, and poor mobility (Exhibit 32F, page 6).

(R. at 22.)

At step three, the ALJ explained his findings that Plaintiff's physical limitation of musculoskeletal functioning and obesity failed to meet any listings or the equivalent of any listings

at step three. (R. at 23.) The ALJ then found that Plaintiff had the RFC to perform light work with additional limitations. More specifically, the ALJ found Plaintiff "needs a sit/stand option—meaning the claimant needs to be able to change position every 30 minutes between sitting and standing but can remain on task for two hours at a time, eight hours in a given workday." (R. at 24.) The ALJ further found Plaintiff "cannot stand more than 4 hours in a given workday." (R. at 24.) The ALJ also found Plaintiff "can never climb ladders, ropes, or scaffolds, but the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl." (R. at 24.) Finally, the ALJ found Plaintiff "should not be exposed to hazards such as unprotected heights." (R. at 24.)

In support of this RFC finding, the ALJ first detailed Plaintiff's subjective statements about her limitations, noting that Plaintiff "reports a diagnosis of arthritis in 2018, primarily affecting her 'whole back'" and she "is on medication." (R. at 24.) The ALJ further noted Plaintiff "reports a diagnosis of degenerative disc disease in 2019" and "a constant pain that is aggravated by standing or sitting for an extended period of time as well as lying down." (R. at 24.) The ALJ noted Plaintiff "does get some relief from medication" and she "denies any surgery." (R. at 24.) The ALJ further noted here that Plaintiff "denies any radiating pain to the lower extremity but does report paresthesia-like symptoms, including 'tingling' as well as 'stabbing,' sensation, and sensations in the left lower extremity." (R. at 24.) The ALJ concluded that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 24–25.)

8

The ALJ then summarized the medical evidence in the record. Specifically, "[a]n April 2018 MRI of the claimant's lumbar spine found lower lumbar spondylosis, worse at L4-L5 where there is a left foraminal disc bulge with superimposed high intensity zone which narrows the left lateral recess and left neural foramen." (R. at 25.) Plaintiff "reported continued pain despite completing over 6 weeks of physical therapy in the 3 months prior." (R. at 25.) Plaintiff "was prescribed diclofenac and other NSAIDs with incomplete benefit and received an epidural steroid injection with incomplete relief." (R. at 25.) "In July 2018 she inquired about surgical intervention and reported some improvement with continued physical therapy." (R. at 25.) "Subsequent imaging from October 2019 found L4-L5 degenerative facet disease here particularly on the right, with no spondylolisthesis, or foraminal or central canal stenosis." (R. at 25.) "Surgical intervention was not recommended, and she was instructed to follow-up with her primary care provider for additional hip pain (Exhibit 21F, page 7) consistent with sciatica." (R. at 25.)

The ALJ noted that a "July 2021 MRI was compared to the prior imaging from April 2018, June 2021, finding very mild disc degenerative changes at L3-L4 with very mild left lateral recess narrowing and mild left foraminal narrowing at these levels, and mild L4-L5 facet arthritis with right L4-L5 facet effusion." (R. at 25.) "July 2021 imaging yielded similar results" and "[r]ecords from August 2021 note a recent flare of sciatica, medications that included Gabapentin and Tramadol, and an offer for lumbar spinal fusion." (R. at 25.) "X-rays from November 2021 confirmed minor anterior subluxation of L4 on L5 of 1.5 mm with 1 mm of retrolisthesis of L3 on L4 otherwise vertebral height and alignment is maintained, and multilevel facet disease of mild severity with grossly maintained disc space height." (R. at 25.)

The ALJ further noted that Plaintiff "returned to work after 10-day break in sciatica symptoms, but the symptoms returned in May 2022." (R. at 25.) Plaintiff "sought work restrictions

at the time" and she "received a steroid injection for pain symptoms related to sciatica during the same month." (R. at 25.) Plaintiff's "symptoms continued through January 2023" and her "diagnoses in April 2023 were lumbar radiculopathy and acute bilateral low back pain with right-sided sciatica." (R. at 25.) The ALJ discussed Plaintiff's "September 2023 consultative examination," wherein Plaintiff "ambulated to the examination room, favoring the left lower extremity." (R. at 25.) Plaintiff "was able to get in and out of a seated position, as well as on and off the exam table with mild difficulty and did not require an assistive device for ambulation." (R. at 25.) Plaintiff "said she could not get up on the exam table, so examination of the hips and knees was extremely limited," and Plaintiff "declined the squat, the tandem, heel, and toe walk, stating that she could not do those." (R. at 25.)

Turning to the opinion evidence, the ALJ first found the opinions of the State agency medical consultants "partially persuasive." (R. at 26.) Noting that these "consultants found the claimant can perform a range of light exertional work activity, with additional postural limitations," the ALJ found "a sit/stand option is appropriate in addition to the above limitations." (R. at 26.) The ALJ further found here that Plaintiff "should have limited exposure to unprotected heights in line with the occasional balancing and problem unprotected heights could present." (R. at 26.)

The ALJ then considered the opinion of the orthopedic consultative examiner, Stephen Brooks Smith, M.D., finding his opinion "partially persuasive." (R. at 26.) Here the ALJ noted that Dr. Smith opined Plaintiff

> was limited to lifting or carrying 11-50 pounds occasionally, and 10 pounds continuously. She can sit, stand, or walk one hour without interruption, sit for four hours total, and stand/walk for 2 hours total. Additionally, the claimant can never climb ladders or scaffolds, occasionally climb ramps or stairs, and frequently balance, stoop, kneel, crouch, or crawl. She can never be exposed to unprotected heights.

(R. at 26.) The ALJ found Plaintiff "more limited in her lifting, limiting her to the light limits of lifting and carrying 20 pounds occasionally, and 10 pounds frequently." (R. at 26.) The ALJ "also limited the claimant to 30 minutes between her changes of position, and further limited her posturals." (R. at 26.) The ALJ stated "[t]he further limitations were based on the record as a whole, including the claimant's testimony." (R. at 26.) Finally, the ALJ found that the "opinions regarding the claimant mental health symptoms . . . are consistent and suggestive of non-severe impairments resulting in no more than mild limitation in any mental functional area." (R. at 26.)

> The ALJ concluded,
>
> [T]he above residual functional capacity assessment in this finding is based on all of the relevant evidence in the case record. While the claimant experiences back pain, she is not as limited as she believes. The record confirms emergency treatment for pain symptoms, but imaging does not support a debilitating condition or the claimant's complaints. Accordingly, the undersigned finds that the above residual functional capacity assessment is the most that the claimant could do on a regular and continuing basis despite the claimant's impairment-related limitations.

(R. at 26.)

After assessing Plaintiff's RFC, the ALJ considered the vocational expert's testimony that jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and residual functional capacity. (R. at 27–28.) Here, the ALJ noted, "[p]ursuant to SSR 00-4p, vocational expert's testimony is accepted, however, it is noted that the vocational expert testified that the Dictionary of Occupational Titles (DOT) does not address a sit/stand option or climbing differentiation, and in this regard, is based on the vocational expert's education and professional experience." (R. at 28.) The ALJ found that Plaintiff can perform work that exists in significant numbers in the national economy and therefore concluded that Plaintiff is not disabled. (R. at 27–29.)

**B    Consideration of RFC-Related Limitations Assessed by Consultative Examiner**

    **1.    Standards**

A claimant's RFC, which represents "the most [she] can still do despite [her] limitations," is determined by assessing all relevant evidence in the case record, including "all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(1), (a)(3); *see also Ladda v. Berryhill*, 749 F. App'x 166, 172 (4th Cir. 2018). The assessment must be based upon all of the relevant evidence, including the medical records, medical source opinions, and the individual's subjective allegations and description of her own limitations. 20 C.F.R. § 404.1545(a)(3).

Social Security Ruling 96-8p further requires that an ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7 (S.S.A. July 2, 1996) (noting that the ALJ "must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Moreover, the ALJ "must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *Id*. Every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by "a narrative discussion describing [ ] the evidence" that supports it. *Dowling*, 986 F.3d at 387 (quoting *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019)) (alteration in original); *see Woods*, 888 F.3d at 694 (explaining that "the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from that evidence to his conclusion") (internal quotation marks omitted) (emphasis in original). Thus, "a proper RFC

analysis has three components: (1) evidence, (2) logical explanation, and (3) conclusion." *Thomas*, 916 F.3d at 311.

"However, failure to strictly comply with these requirements does not automatically necessitate remand." *Owens v. Kijakazi*, No. 22-cv-1273, 2023 WL 2344224, at *3 (4th Cir. Mar. 3, 2023) (citing *Mascio*, 780 F.3d at 636). "Nor is there any categorical rule that requires an ALJ to specifically reject every limitation contained in a report the ALJ has discussed and found to be only partially or somewhat persuasive, so long as the reviewing court can ascertain the basis for the ALJ's findings." *Id*. "The driving consideration is whether the ALJ's analysis allows for meaningful judicial review." *Id*.

As recently noted by the Fourth Circuit Court of Appeals,

Often, as here, the medical sources arguably point in different directions. Because the ALJ is "[t]he trier of fact," "the duty to resolve" this "conflicting medical evidence" lies with the ALJ. *Richardson v. Perales*, 402 U.S. 389, 399, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). When the ALJ does that by applying the correct factors, we won't Monday-morning-quarterback the decision unless it is exceptionally clear that the ALJ made a mistake. "'[W]e do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute our judgment' for the ALJ's." *Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Thus, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (brackets deleted) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam)).

At the same time, we ask not just "whether the ALJ examined all relevant evidence" but also whether the ALJ "offered a sufficient rationale in crediting certain evidence and discrediting other evidence." *Shelley C. v. Comm'r of Soc. Sec. Admin.*, 61 F.4th 341, 353 (4th Cir. 2023). The reason for this requirement, as in other administrative-law contexts, is that appellate *re*view is possible only when someone has first articulated a *view. See Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656, 662 (4th Cir. 2017). Missing analysis "makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). And so we have said that an ALJ must not only reach a conclusion supported by substantial evidence but also "build an accurate and logical bridge from the evidence to their conclusions." *Arakas*, 983 F.3d at 95 (quotation omitted).

*Drumgold v. Comm'r of Soc. Sec.*, 144 F.4th 596, 605 (4th Cir. 2025).

### 3. Analysis

As noted above, Plaintiff argues that the ALJ did not adequately explain why he declined to adopt certain limitations opined by Plaintiff's orthopedic consultative examiner, Dr. Smith, whose opinion the ALJ found partially persuasive. (Dkt. No. 22 at 2–7.) Specifically, Dr. Smith opined, *inter alia*, that Plaintiff was limited to sitting for four hours total and standing/walking for two hours total. (R. at 1256.) According to Plaintiff, the ALJ offered no explanation as to why Plaintiff's RFC assessment: (1) included no sitting limitation and (2) limited Plaintiff to four hours of standing instead of the two hours opined by Dr. Smith. (*Id.* at 5–6.) In response, the Commissioner asserts that "[b]y limiting Plaintiff to four hours of standing during the eight hour workday, the ALJ implicitly adopted a sitting limitation as well." (Dkt. No. 23 at 11.) The Commissioner further argues that the ALJ reasonably concluded that Plaintiff had a greater ability to stand/walk than Dr. Smith suggested" based on the record evidence. (*Id.* at 11–18.)

Upon careful review, the record shows that while the ALJ described the record evidence in detail, he offered sparse explanation for how that evidence supported his RFC assessment. As explanation for his RFC assessment, the ALJ cited generally to "all of the relevant evidence in the case record." (R. at 26.) However, as discussed above, the record included conflicting evidence as to the severity of Plaintiff's impairments, which were not expressly reconciled by the ALJ. The ALJ then specified that "[w]hile the claimant experiences back pain, she is not as limited as she believes. The record confirms emergency treatment for pain symptoms, but imaging does not support a debilitating condition or the claimant's complaints." (R. at 26.)

Notably, the ALJ indicated throughout his decision that he believed Plaintiff required a more limited sit/stand option than afforded by the opinion evidence. In finding the opinions of the

State agency medical consultants only "partially persuasive," the ALJ found "a sit/stand option is appropriate." (R. at 26.) And most relevant here, the ALJ indicated that Dr. Smith's opinion was only "partially persuasive" because "the record as a whole, including the claimant's testimony" established that the following "further limitations" were appropriate; namely, "limiting [Plaintiff] to the light limits of lifting and carrying 20 pounds occasionally, and 10 pounds frequently"; "limit[ing] the claimant to 30 minutes between [Plaintiff's] changes of position," and "further limit[ing] her posturals." (R. at 26.) While the Commissioner asserts that the ALJ "concluded that Plaintiff had a greater ability to stand/walk than Dr. Smith suggested," (Dkt. No. 23 at 11), the ALJ's brief discussion of Dr. Smith's opinion indicates he found it partially persuasive because it was not sufficiently restrictive. Accordingly, the undersigned is left to guess at how the ALJ arrived at the conclusion that Plaintiff required "further limitations" than that assessed by Dr. Smith but then failed to adopt Dr. Smith's finding that Plaintiff is limited to standing/walking for two hours in an eight hour workday.

While the Commissioner asserts that the decision as a whole explains the ALJ's reasoning for the limitations, the ALJ did not articulate much of the explanation that the Commissioner offers the Court. (Dkt. No. 23 at 15–18.) Rather, the ALJ mostly summarized the evidence without any narrative discussion explaining the role of that evidence in his determination. Indeed, the only evidence specifically cited by the ALJ as support for his RFC assessment is that "imaging does not support a debilitating condition or the claimant's complaints." (R. at 26.) The ALJ's seeming sole reliance on objective evidence to discount Plaintiff's subjective statements is discouraged under recent Fourth Circuit case law. For example, in *Arakas*, the Fourth Circuit emphasized that an ALJ may not "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate them."

15

983 F.3d at 95 (quoting SSR 16-3p, 2016 WL 1119029, at *5 (Mar. 16, 2016) (internal quotation marks omitted)); *see also Donald O. v. Comm'r of Soc. Sec.*, No. 4:20-cv-00054, 2021 WL 6048954, at *8 (W.D. Va. Dec. 21, 2021) ("I cannot find that ALJ Kennedy's reasons for discounting Donald's complaints of back pain and related physical limitations are supported by substantial evidence. ALJ Kennedy discounted Donald's report of symptoms and limitations because (1) he found they were inconsistent with the objective medical evidence showing a mix of normal and 'mild' findings, and (2) Donald did not require surgery, braces, or devices to assist with walking and he 'declined physical therapy and injection treatment, although that is all the objective findings and deficits call for. . . . Both reasons are grounded in the ALJ's assessment of the objective medical evidence."); *see also* SSR 16-3p, 2017 WL 5180304, at *5 ("We will not evaluate an individual's symptoms based solely on objective medical evidence unless that objective medical evidence supports a finding that the individual is disabled.").

In summary, given the ALJ's assessment of Dr. Smith's opinion and his otherwise limited explanation for Plaintiff's RFC, the undersigned cannot determine whether the ALJ's conclusion that Plaintiff "cannot stand more than 4 hours in a given workday" is supported by substantial evidence. Remand is therefore appropriate on this basis.[4] *See Drumgold*, 144 F.4th at 605 ("Missing analysis 'makes it impossible for a reviewing court to evaluate whether substantial evidence supports the ALJ's findings.'" (quoting *Radford*, 734 F.3d at 295)); *Patterson*, 846 F.3d at 662 (explaining that failure to explain is usually harmful "because such a failure prevents, or at least substantially hinders, judicial review"); *Mascio*, 780 F.3d at 636 ("'Remand may be

---

[4] Here, the undersigned finds that the recent Fourth Circuit opinion, *Owens v. Kikjakazi*, does not compel a different outcome. 2023 WL 2344224. In *Owens*, the Court found that the ALJ "drew logical connections between [the record] evidence and [the ALJ's] assessment" of the claimant's RFC such that there was no error in the ALJ's failure to include certain limitations opined by the state agency physicians, whose opinions the ALJ found somewhat persuasive. 2023 WL 2344224, at *3–*4. Unlike in *Owens*, the ALJ's decision here contains too little explanation to allow meaningful review.

appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'") (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)); *William L. v. Kijakazi*, No. 2:22-cv-00543, 2023 WL 6631721, at *8 (S.D.W. Va. Sept. 12, 2023) ("The ALJ did not perform a functional analysis to connect her summary of the evidence to her RFC conclusions regarding Claimant's ability to carry weight and follow instructions, which frustrates meaningful review. Therefore, the RFC assessment is not supported by substantial evidence."), *adopted by*, 2023 WL 6628827 (S.D.W. Va. Oct. 11, 2023).

    **C.**    **Remaining Allegation of Error**

Plaintiff also argues that remand is necessary because: (1) the ALJ's RFC assessment was "internally inconsistent" and "in conflict with either a sedentary or light exertion work finding"; and (2) the RFC assessment did not account for Plaintiff's mild limitations in maintaining concentration, persistence, and pace. (Dkt. No. 22 at 7–16.) The undersigned does not address these remaining allegations, as they may be rendered moot on remand. As part of the overall reconsideration of the claim upon remand, the ALJ should, if necessary, also take into consideration the additional allegation of error raised by Plaintiff.

## CONCLUSION

It is therefore **RECOMMENDED**, for the foregoing reasons, that the Commissioner's decision be **REVERSED** pursuant to sentence four of 42 U.S.C. § 405(g) and that the case be **REMANDED** for a new hearing consistent with this Report & Recommendation.

IT IS SO RECOMMENDED.

January 12, 2026
Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.**  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).